# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **RICHARD REDICK** : | |
| 612 White Rock Street : | |
| Delaware, Ohio 43015 : | |
| : | |
| Plaintiff, : | CASE NO. 2:18-cv-60 |
| : | |
| vs. : | JUDGE |
| : | |
| : | MAGISTRATE JUDGE |
| **MOLINA HEALTHCARE, INC.** : | |
| c/o Statutory Agent : | |
| Corporation Service Company : | |
| 50 West Broad Street, Suite 1330 : | |
| Columbus, Ohio 43215 : | **Jury Demand Endorsed Hereon** |
| : | |
| : | |
| Defendant. : | |

## COMPLAINT

NOW COMES Plaintiff Richard Redick ("Plaintiff") and proffers this Complaint for damages against Defendant Molina Healthcare, Inc. (hereinafter "Defendant" and/or "Molina").

## JURISDICTION AND VENUE

1. All counts contained herein are brought pursuant to the laws of the United States, therefore this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

2. This action is brought pursuant to the Family Medical Leave Act, 29 U.S.C. § 2611(2) and 28 U.S.C. § 1331.

3. Venue is proper pursuant to 28 U.S.C. § 1391, due to the fact that the Defendant has office location(s) based in Columbus, Franklin County, Ohio, at which the events in question took place.

## THE PARTIES

4. Plaintiff is a natural person residing in Delaware, Delaware County, Ohio.

5. Defendant Molina Healthcare, Inc. ("Molina") is a foreign corporation with its corporate headquarters located at 200 Oceangate, Long Beach, California 90802. Molina has multiple offices and locations doing business throughout the United States, including the Southern District of Ohio.

6. At all times relevant herein, Plaintiff was an employee of Defendant as defined by the Family Medical Leave Act, 29 U.S.C. § 2611(2).

7. Defendant Molina is a covered "employer" as that term is defined by the Family Medical Leave Act.

8. Defendant is an "employer" as defined by 29 U.S.C. § 2611(4)(A). Defendant was engaged in commerce or an industry or activity affecting commerce, and employed 50 or more employees for each working day during each of 20 or more calendar workweeks at all times during Plaintiff's employment.

## FACTUAL BACKGROUND

9. Plaintiff began working full time for Defendant Molina on or about April 2, 2012, and remained employed by Defendant until his termination on or about October 9, 2017.

10. In approximately June 2015, Defendant promoted Plaintiff to a direct supervisor position. As the Supervisor of IT (Regional – East Coast), his job duties included but were not limited to, managing a team of technicians.

11. On or about March 8, 2017, Plaintiff was approved for FMLA on an intermittent basis, effective March 2, 2017 through February 17, 2018.

12. Plaintiff was diagnosed with diabetes in the years preceding his employment with Defendant Molina and frequently suffers from flare-ups and/or experiences symptoms related to his serious medical condition.

13. Plaintiff's requested and approved intermittent FMLA leave was for Plaintiff's serious medical condition of diabetes.

14. Pursuant to his medical certification, Plaintiff was approved to take one (1) hour up to one (1) day of FMLA per episode, two (2) times per week for flare-ups.

15. Defendant was aware that Plaintiff suffered from diabetes, as Plaintiff had requested and was approved for intermittent FMLA leave during his employment with Defendant, among other reasons.

16. Defendant was aware that Plaintiff suffered from diabetes, as Plaintiff would work remotely on days during which he suffered from flare ups and/or needed to attend medical appointments for this condition, among other reasons.

17. Plaintiff always correctly followed Defendant's FMLA notification and/or call-off process, which required him to promptly inform his Supervisor of any FMLA and/or medical-related absences and/or appointments as far in advance as possible, in addition to tracking his time off in a monthly log which he subsequently submitted for his supervisor's approval.

18. Despite being entitled to approved, protected FMLA leave, Plaintiff attempted to minimize the use of his leave as much as possible.

19. Even on days Plaintiff utilized his intermittent FMLA, he would log on remotely to supervise the Service Desk and remained on-call to provide personal assistance to both his own team of supervisees and technicians in other locations, among other efforts to remain available.

20. Once Plaintiff was approved for intermittent FMLA in approximately March 2017, Plaintiff's supervisor at the time, Patrick Lee, immediately contacted Plaintiff stating, "You never let me know that you were applying for this!" and "You know that we have other folks in this department that are currently abusing [FMLA] for time off; that isn't what you are trying to do, is it?!"

21. Supervisor Lee proceeded to ask numerous questions about Plaintiff's reasons for taking intermittent FMLA.

22. In order to protect his privacy, Plaintiff politely declined to respond and referred Supervisor Lee to Defendant's Leave of Absence Department to discuss any concerns regarding Plaintiff's protected medical leave.

23. The following day, Plaintiff communicated his concerns about Supervisor Lee's questions and comments regarding Plaintiff's FMLA to then-Human Resources Director, Ann Bonney.

24. While employed by Defendant Molina, Plaintiff was qualified for the Supervisor of IT (Regional – East Coast) position, in part due to his tenure with the company; his receipt of multiple awards, recognitions, and recommendations over the years, in addition to very positive merit reviews and pay increases, and had no difficulties performing the essential functions of his job.

25. In approximately April 2017, Plaintiff received a very positive performance review. Defendant Molina awarded him a merit-based pay increase of 2.5 percent, the highest which could be given at the time.

26. In approximately June 2017, Plaintiff began reporting to his new supervisor, Alex Manassero, who was based in Defendant's corporate offices in Long Beach, California.

27. Despite the long distance, Plaintiff consistently made documented efforts to communicate with his direct supervisor, provided detailed updates, and sought feedback and coaching to continuously improve his work performance.

28. In July 2017, Defendant announced Project Nickel, a company initiative to eliminate approximately ten (10) percent of its staff through upcoming layoffs which would conclude in September 2017.

29. On or about July 24, 2017, Plaintiff's department received formal notice of Project Nickel.

30. Throughout July and August 2017, Plaintiff continued to take his approved, protected medical leave, as he was entitled to do.

31. During this time, Plaintiff continued to perform his job duties without any issues.

32. On or about August 8, 2017, Supervisor Manassero suddenly served Plaintiff with a Disciplinary Action Notice (DAN) which allegedly constituted a "Final Warning."

33. This was a shock to Plaintiff, as he had received absolutely no prior job discipline, nor any counseling with regards to his job performance during his five (5) years of employment with Defendant Molina.

34. The August 8, 2017 DAN included Plaintiff's alleged performance issue of "Availability", which stated, "It is management's responsibility to be available and responsive during working hours and when on-call after hours. Not being available for his team during working hours or on call after hours can negatively impact the business and team."

35. In efforts to be proactive, Plaintiff initiated a meeting with Human Resources Manager Greg Klaus and Human Resources Generalist Scott Morrison, which occurred at the end of the week of August 7, 2017.

36. On or about August 18, 2017, Plaintiff submitted his written Rebuttal to the Disciplinary Action Notice, stating in part, "I feel like my FMLA is being used against me in the statement of 'Not being available for his team during working hours or on-call after hours can negatively impact the business and team.'"

37. Following submission of his Rebuttal, Plaintiff exchanged emails with Human Resources in which he communicated his concerns about whether his Rebuttal would be shared with his Supervisor, stating in part, "A huge issue for me was my mention of FMLA in that rebuttal, I have faced retaliatory issues because of that from my ESD Management."

38. Throughout the months of August and September, Plaintiff continued to take his approved, protected medical leave, as he was entitled to do.

39. During this time, Plaintiff continued to communicate with and consistently received positive feedback regarding his job performance.

40. On or about September 14, 2017, the remaining Molina employees were released pursuant to Project Nickel, each receiving sixty (60) days of severance pay.

41. For nearly a month afterwards, Plaintiff continued to be employed by Defendant, as he was not part of the Project Nickel layoffs.

42. On or about October 5, 2017, Plaintiff took approved intermittent FMLA leave, timely notifying his Supervisor and logging his time in his monthly time log per usual.

43. Plaintiff also logged on remotely to supervise the Service Desk and remained available on-call to provide personal assistance to his team of supervisees and other technicians.

44. On or about October 9, 2017, Plaintiff was called into the office by Human Resources, in addition to Supervisor Manassero who appeared by phone, and Plaintiff's employment with Molina was terminated.

45. Plaintiff's termination occurred a mere four (4) days after taking his approved, protected medical leave.

46. Prior to applying for and being approved for intermittent FMLA, Plaintiff had a solid record of attendance and absolutely no perceived issues of absenteeism and/or unavailability during his entire employment with Defendant.

47. Since being approved for intermittent FMLA, Plaintiff's only absences were his approved, protected medical leave for his serious medical condition of diabetes.

48. Based on Plaintiff's attendance records and lack of any significant disciplinary history until he applied for and was approved for intermittent FMLA, he was nowhere near being terminated for attendance or disciplinary issues at that time or at any other time during his approximately (5) years of employment with Defendant Molina.

49. As such, Defendant's reason(s) offered for Plaintiff's termination are untrue, lacked merit, and served as pretext for his termination.

50. It is abundantly clear that Plaintiff was retaliated against for his use of FMLA leave, as Defendant issued disciplinary action based on his alleged unavailability, which he had never received before, and subsequently terminated his employment almost immediately following his FMLA protected absences.

51. Defendant interfered with Plaintiff's rights to intermittent FMLA leave by retaliating against him, issuing disciplinary action based on his alleged unavailability, denying him the remainder of intermittent FMLA leave he was qualified for and ultimately terminating his employment.

## COUNT I
### Interference – Violation of the Family Medical Leave Act

52. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as fully rewritten herein.

53. Plaintiff was entitled to FMLA leave, as he suffers from a serious medical condition, applied for and was approved for intermittent FMLA leave on multiple occasions during his employment with Defendant Molina.

54. Defendant was aware that Plaintiff suffered from a serious medical condition that qualified him for FMLA leave because he had applied for and was approved for intermittent FMLA leave during his employment with Defendant Molina.

55. Defendant was aware that Plaintiff suffered from diabetes, as Plaintiff would work remotely on days during which he suffered from flare ups and/or needed to attend medical appointments for this condition.

56. Defendant interfered with Plaintiff's FMLA rights by issuing disciplinary action based on alleged unavailability, whereas any absences were related to his serious medical conditions and covered by FMLA, thereby deterring and/or preventing Plaintiff from exercising his right to request and take protected leave.

57. Defendant interfered with Plaintiff's FMLA rights by terminating his employment, thereby preventing his from taking the full twelve (12) weeks of leave he was entitled to under the FMLA.

58. Defendant's August 8, 2017 discipline of Plaintiff was directly related to his use of FMLA leave, because Defendant issued the Disciplinary Action Notice shortly after Plaintiff had taken approved, protected medical leave and because it reprimanded him for alleged "unavailability."

59. Defendant's termination of Plaintiff was directly related to his use of FMLA leave,

because Defendant terminated Plaintiff merely four (4) days after taking an absence which was covered by FMLA.

60. Defendant lacked good faith and/or reasonable grounds to believe it had not violated the FMLA in its discipline and/or subsequent discharge of Plaintiff.

61. Defendant's violations of the Family and Medical Leave Act entitles Plaintiff, pursuant to 29 U.S.C. § 2617(a), to monetary damages which include back pay and benefits, statutory liquidated damages, and attorneys' fees and costs of bringing this litigation, in an amount to be determined at trial.

## COUNT II
**Retaliation- Violation of the Family Medical Leave Act**

62. Plaintiff reasserts and reincorporates each and every allegation contained in the paragraphs above as if fully rewritten here.

63. Plaintiff attempted to exercise his rights under the FMLA, as he frequently took intermittent FMLA for his serious medical condition of diabetes.

64. Plaintiff suffered an adverse employment action when Defendant issued him disciplinary action based on his alleged unavailability for absences solely related to his serious medical conditions and covered by FMLA.

65. Plaintiff suffered an adverse employment action when Defendant terminated him from his position in retaliation for taking intermittent FMLA leave and issuing disciplinary action to him that was without merit.

66. Defendant's August 8, 2017 discipline of Plaintiff was directly related to his use of FMLA leave, because Defendant issued the Disciplinary Action Notice shortly after Plaintiff had taken approved, protected medical leave.

67. Defendant's termination of Plaintiff was directly related to his use of FMLA leave,

because Defendant terminated Plaintiff merely four (4) days after taking an absence which was covered by FMLA and/or Plaintiff had a reasonable, good faith belief that both were covered by FMLA.

68. Defendant lacked good faith and/or reasonable grounds to believe it had not violated the FMLA in its discipline and/or subsequent discharge of Plaintiff.

69. Defendant's violations of the Family and Medical Leave Act entitles Plaintiff, pursuant to 29 U.S.C. § 2617(a), to monetary damages which include back pay and benefits, statutory liquidated damages, and attorneys' fees and costs of bringing this litigation, in an amount to be determined at trial.

WHEREFORE, Plaintiff demands:

For all Counts, monetary damages including back pay and benefits, statutory liquidated damages, expert witness fees and attorneys' fees and costs, and front pay, compensatory damages and punitive damages in an amount to be determined at trial, but in any event not less than $75,000.00 and any and all other relief, which the Court deems just and appropriate.

Respectfully submitted,

/s/*Rachel A. Sabo, Esq.*
Rachel A. Sabo (0089226)
Peter G. Friedmann (0089293)
**The Friedmann Firm LLC**
1457 S. High Street
Columbus, OH 43207
Rachel@TFFLegal.com
Pete@TFFLegal.com
614-610-9757 (Phone)
614-737-9812 (Fax)

Michelle E. Lanham (0091944)
**Michelle E. Lanham, Attorney at Law, LLC**

445 Hutchinson Avenue, Suite 100
Columbus, Ohio 43235
Michelle@mlanhamlaw.com
614-300-5896 (Phone)
614-737-5239 (Fax)


*Counsel for Plaintiff*


## JURY DEMAND

Plaintiff demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/*Rachel A. Sabo*
Rachel A. Sabo (0089226)