UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RICHARD REDICK,

        Plaintiff,

v.

MOLINA HEALTHCARE, INC.,

        Defendant.

Case No. 2:18-cv-60
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

This matter is before the Court on Defendant Molina Healthcare, Inc.'s ("Defendant")

Motion for Summary Judgment (ECF No. 26). Plaintiff Richard Redick ("Plaintiff") has

responded (ECF No. 28) and Defendant has replied (ECF No. 29). Thus, the motion is ripe for

review. For the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 26) is

**DENIED**.

### I.

Defendant is a healthcare company headquartered in Long Beach, California. (Def.'s Mot.

Summ. J. at 3, ECF No. 26.) Plaintiff commenced employment with Defendant on April 2, 2012,

in Defendant's Columbus, Ohio office. (Redick Dep. 50:21–23; Ex. 1, ECF No. 23.) Defendant

hired Plaintiff as an end user support specialist. (*Id.* at Ex. 1.) Plaintiff's employment was at-will

for an indefinite term. (*Id.*) Plaintiff's duties were akin to that of information technology ("IT")

personnel. (*See id.* at 67:8–71:4.) His duties included removing and installing software, protecting

patient health information, and fulfilling Defendant's employees' and clients' other technological

needs. (*See id.* at 67:8–71:4.)

In Plaintiff's 2012 annual performance evaluation, Plaintiff's overall performance was

listed as "meets expectations." (*Id.* at Ex. 7.) The 2012 evaluation included positive comments about Plaintiff, such as:

- Great to work with;
- Can do attitude;
- All incidents assigned to him are resolved or escalated in a timely manner;
- Flexible;
- Can be counted on when overtime is needed;
- Reliable;
- Adapts well; and
- Excellent customer service feedback each month.

(*Id.*) The evaluation also noted Plaintiff needs improvement in logging tickets for each call. (*Id.*) Plaintiff remained in this role from April of 2012 until June of 2015. (*Id.* at 62:4–7.)

In June of 2015, Defendant posted a job application for supervisor of IT for its east coast region. (*Id.* at 62:4–20.) Defendant interviewed and hired Plaintiff for the position. (*Id.* at 62:15–23.) This promotion came with a pay raise and the duty to manage a team of technicians. (*Id.* at 62:24–25; Redick Aff. ¶ 5, ECF No. 28-2.) Plaintiff's supervisor in this new position was Patrick Lee. (Redick Aff. ¶ 31.) When first hired as a supervisor, Plaintiff managed a team of ten or eleven people. (*Id.* at ¶¶ 27–28.)

Plaintiff's 2016 feedback forms contained positive feedback, much like his 2012 performance evaluation. (*See* Redick Dep. Exs. 10, 11.) This feedback included:

- Always willing to step in to assist on any issue or problem;
- Trying to provide the best service possible;
- Looks for opportunities to improve the processes and tasks;
- Very good at keeping his direct reports informed of any new or changing information;
- Eager to take on new assignments;
- Not afraid to try new ideas;
- Willing to accept constructive feedback; and
- Works hard on his personal weaknesses.

(*Id.*) In addition, the feedback forms noted Plaintiff "[s]ometimes deflects questions," and "has been guilty of pointing fingers in heated situations." (*Id.*)

In September of 2016, Mr. Lee created a "Supervisor's Memo to File" ("SMF") for Plaintiff's records. (*Id.* at Ex. 9.) Defendant's supervisors create these files "to document informal verbal counseling or reminders regarding minor first-time offenses." (*Id.*) In contrast, "Disciplinary Action Notices," ("DAN") are created to document "serious violations of company policy [or] repeated performance problems." (*Id.*) Plaintiff's September 2016 SMF recorded an occasion when Plaintiff failed to follow the chain of command to report a process issue. (*Id.*) The form noted that Plaintiff "acknowledged he should have followed the '[c]hain of [c]ommand' and will going forward." (*Id.*)

Near the end of 2016, Doctor Neil Richard diagnosed Plaintiff with type 2 diabetes. (Redick Dep. 33:6–8, 34:13–35:16; Redick Aff. ¶ 8.) Dr. Richard completed Plaintiff's medical paperwork. (*Id.*) Plaintiff submitted the paperwork to Defendant's Leave of Absence ("LOA") department to apply for leave under the Family and Medical Leave Act ("FMLA"). (*Id.* at 77:18–23; Redick Aff. ¶ 8.) The LOA department approved FMLA leave for Plaintiff and notified him of an upcoming meeting to discuss the details. (Redick Dep. 81:4–15.) Mr. Lee, still Plaintiff's supervisor at this time, was also informed of, and invited to, the meeting. (*Id.*) About ten minutes after Plaintiff received notice of the upcoming meeting, Mr. Lee called Plaintiff. (*Id.* at 81:16–23.) Mr. Lee noted that Plaintiff had not informed him he was requesting FMLA leave and asked for details. (*Id.* at 81:16–23.) Mr. Lee also asked if Plaintiff was going to abuse his FMLA leave, like another agent in their office, by taking "all kinds of time off." (*Id.* at 82:1–7.) Plaintiff stated it was for a medical condition and he would not abuse it. (*Id.*) Plaintiff, feeling like Mr. Lee's questioning intruded into his privacy, reported the incident to the human resources ("HR") director. (*Id.* at 82:8–15.)

The LOA department approved FMLA leave for Plaintiff on an intermittent basis effective

February of 2017 through February of 2018. (Redick Aff. ¶ 14.) Plaintiff was entitled to leave at a rate of one hour up to one day per episode, up to two times per week. (*Id.*; Pl.'s Resp., Ex. 3.) He was also required to notify his supervisor of any medical appointments as far in advance as possible. (*Id.*) Additionally, the LOA department required Plaintiff to record his FMLA usage on monthly "intermittent tracking" logs, have his supervisor sign the logs, and submit the logs to the LOA department. (Redick Aff. ¶ 24; Pl.'s Resp., Ex. 4.) Plaintiff followed all of these requirements when he took leave for dizziness, nausea, fatigue and other similar symptoms. (Redick Dep. 83:25, 85:17–25, 86:16–25.)

While the LOA department primarily handles Defendant's employees' FMLA leave, the members of the HR department are also aware of employees' FMLA leave. (*See* Klaus Dep. 29:6–10, ECF No. 27.) Gregory Klaus, Defendant's HR manager from June or July of 2016 to October of 2018, testified that the HR department had knowledge of employees' FMLA leave approval or disapproval, as well as the parameters the employee had to follow. (*Id.* at 8:22–24, 9:13–15, 29:6–10.) In addition, the supervisors had knowledge of their subordinates FMLA leave because they were required to sign the monthly tracking logs. (Redick Aff. ¶¶ 24–25, 34–35; Manassero Dep. 10:12–18, ECF No. 24.)

In June of 2017, Plaintiff began reporting to a new supervisor, Alex Manassero. (Manassero Dep. 9:25–10:1.) Mr. Manassero worked in Long Beach, California, and thus, was not physically located in the same office as Plaintiff. (*Id.* at 10:5–10.) Mr. Manassero knew Plaintiff used intermittent FMLA leave for a medical condition but did not know the details about the medical condition. (*Id.* at 10:11–18.) Mr. Manassero testified that when he received the position Mr. Lee "brought [him] up to speed," and they "discussed [Mr. Lee's] experience with [Plaintiff]." (*Id.* at 12:25–13:3.) Mr. Lee told Mr. Manassero that Plaintiff "needed mentoring,"

because "[h]e frequently would [not] take accountability." (*Id.* at 13:5–12.)

In July of 2017, Defendant implemented a reduction in workforce called "Project Nickel." (Redick Dep. 87:9–16.) Plaintiff had both independent contractors and employees working in his department. (*Id.* at 87:21–25.) Project Nickel resulted in the elimination of many independent contractor positions. (*Id.* at 88:1–4.) After Project Nickel, Plaintiff had only four full-time staff working in his department, two in Columbus and two in Michigan. (Redick Aff. ¶ 28.) Mr. Klaus testified Project Nickel was "an adjustment for a number of teams to do the same work[,] or more[,] work with less resources." (Klaus Dep. 38:12–17.)

On August 4, 2017, Mr. Manassero met with Plaintiff to discuss issues in Plaintiff's performance. (Redick Aff. ¶ 36.) Then on August 8, 2017, Mr. Manassero issued Plaintiff his first DAN, listing the performance issues discussed at their August 4 meeting. (*Id.*; Pl.'s Resp., Ex. 16.) This was Plaintiff's first formal discipline. (Redick Aff. ¶¶ 39–40.) The DAN stated "final warning." (Pl.'s Resp., Ex. 16.)

The first issue listed on the DAN was "inappropriate behavior," described as "being too loud and using curse words with a subordinate." (Manassero Dep. 17:1–7.) Matthew Bachman, a supervisor in another department near Plaintiff's department, had previously emailed Plaintiff regarding this concern. (Redick Dep. Ex. 12; 109:9–24; Manassero Dep. 17:16–22.) The subordinate Mr. Bachman mentioned was Michael Bennet. (*Id.* at 100:25–101:2.) Plaintiff states he took "immediate action" by meeting with Mr. Bennet and Mr. Bachman to discuss the noise issues. (Redick Aff. ¶ 37; Manassero Dep. 31:7–11.)

The second issue listed on the DAN stated that Plaintiff "failed to deliver coaching to his team" in May of 2017, June of 2017, and July of 2017. (Redick Dep., Ex. 16.) Plaintiff testified he did not have access to the internet system required to log the coaching. (*Id.* at 119:16–25.)

Instead, Plaintiff was using older manual forms to log his coaching. (*Id.* at 120:2–10.) Plaintiff had notified Mr. Manassero of this problem and his use of manual forms. (Pl.'s Resp., Ex. 15.)

The third issue on the DAN was availability. (Redick Dep. Ex. 16.) The DAN stated "[d]uring normal business hours Plaintiff puts up an auto away message[] in his email." (*Id.*) It also stated that "[i]t is management's [sic] responsibility to be available and responsive during working hours and when on call after hours." (*Id.*) Plaintiff states he "immediately stopped using the [o]ut of [o]ffice' email replies [when] management told [him] this was an issue." (Redick Aff. ¶ 51; *see also* Redick Dep. 134:3–19.) Plaintiff explained that he used these emails to communicate to others he would respond within the required time frame. (*Id.*)

Finally, the DAN listed "lack of follow through," stating that Plaintiff had failed to complete a required training. (Redick Dep. Ex. 16.) In response to the DAN, Plaintiff submitted a rebuttal to Mr. Klaus and noted "I feel that my FMLA is being used against me." (Redick Aff. ¶¶ 56–57.)

In late September of 2017,[1] Mr. Manassero filed a SMF that detailed several issues in Plaintiff's performance. (Pl.'s Resp., Ex. 11.) The issues were: (1) tickets left in Plaintiff's team's queue for a month without being answered; (2) Mr. Bennet's failure to read the details in a ticket before asking a customer a question; (3) Plaintiff failing to follow-up with a customer after-hours; and (4) Mr. Bennet emailing a customer inappropriately. (*Id.*) Mr. Manassero spoke informally with Plaintiff regarding these issues. (Redick Aff. ¶ 62.) Plaintiff did not know that Mr. Manassero filed this discussion as a SMF. (*Id.*)

In September of 2017, Plaintiff took intermittent FMLA leave on the 5th, 12th, 21st, 25th,

---

[1] The SMF does not state the exact date it was filed, though it mentions dates in September of 2017 when incidents occurred. (*See* Pl.'s Resp., Ex. 11 (listing incidents on September 20, 21, 24, and 25, 2017).) Neither Plaintiff or Mr. Manassero testified to the exact date. Defendant's motion and Plaintiff's response indicate it was filed in "late September of 2017." (*See* Def.'s Mot. Summ. J. at 9; Pl.'s Resp. at 7.) Thus, the exact date is unknown.

and 26th. (Pl.'s Resp., Ex. 5.) On September 26, 2017, Mr. Manassero emailed Mr. Klaus recommending immediate termination and stating, "Mr. Redick cannot perform his job duties." (Klaus Dep. Ex. 1.) In response, Mr. Klaus asked for "concrete examples" of Plaintiff's deficiencies. (*Id.*) Mr. Manassero and Mr. Klaus exchanged further emails, discussing Plaintiff and Mr. Bennet. (*Id.*) In one email, Mr. Klaus expressed concern about holding Plaintiff accountable as a manager for Mr. Bennet's behavior without holding Mr. Bennet accountable as well. (*Id.*) On September 29, 2017, Mr. Klaus told Mr. Manassero that the HR department was "supportive of [Mr. Manassero's] request for termination." (*Id.*)

On October 5, 2017, Plaintiff took FMLA leave. (Redick Aff. ¶ 65.) He returned to work on October 6, 2017. (*Id.* at ¶ 66.) Defendant terminated Plaintiff on October 9, 2017. (*Id.* at ¶ 67.)

Plaintiff brought suit against Defendant for interference with the rights provided by the FMLA and for retaliation for exercising those rights. (Compl. ¶¶ 52–69.) Defendant moved for summary judgment on all of Plaintiff's claims. (*See* Def.'s Mot. Summ. J. at 2.)

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is

a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (The requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts."). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hamad v. Woodcrest Condo. Ass'n.*, 328 F.3d 224, 234–35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52).

### III.

"The FMLA entitles qualifying employees to up to twelve weeks unpaid leave each year if, among other things, an employee has a 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005) (quoting 29 U.S.C. § 2612(a)(D)). There are two theories upon which a party can recover under the FMLA: (1) the interference theory arising from Section 2615(a)(1), which prohibits interfering with, restraining, or denying the exercise of any right provided under the FMLA; and (2) the discrimination theory, also known as the retaliation theory, arising from Section 2615(a)(2), which prohibits discharging, or in any other manner discriminating against, an individual for opposing any practice made unlawful by the FMLA. 29 U.S.C. § 2615(a)(1)–(2); *Edgar v. JAC Prods.*, 443 F.3d 501, 507 (6th Cir 2006); *Arban v. West Publ'g Corp.*, 345 F.3d 390, 401 (6th Cir. 2003). "[T]he FMLA, like Title VII, authorizes claims in which an employer

bases an employment decision on both permissible and impermissible factors." *Hunter v. Valley View Local Sch.*, 579 F.3d 688, 692 (6th Cir. 2009).

"[A] single act may potentially constitute both interference and retaliation." *Wallner v. J.B. Hilliard, W.L. Lyons LLC*, 590 F. App'x 546, 551 (6th Cir. 2014). "Employers who violate these prohibitions are 'liable to any eligible employee affected' for damages and appropriate equitable relief." *Walton*, 424 F.3d at 485 (quoting 29 U.S.C. § 2617(a)(1)).

A violation of the FMLA may be established either by direct or circumstantial evidence. *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). "Direct evidence of illegal discrimination is evidence that unlawful discrimination, if believed, would *require* the conclusion that unlawful discrimination was at least a motivating factor." *Walker v. JP Morgan Chase Bank, N.A.*, No. 3:13-cv-356, 2015 U.S. Dist. LEXIS 48335, at *27 (S.D. Ohio Apr. 13, 2015) (citing *Id.*) (emphasis added).

When a plaintiff does not identify direct evidence of FMLA interference or retaliation, then the burden-shifting framework from *McDonnel Douglas* is applied. *Id.; see also Donald v. Sybra, Inc.*, 667 F.3d 757, 761–62 (6th Cir. 2012). Thus, the burden is initially on the plaintiff to successfully show the prima facie case. *See id.* If the plaintiff succeeds, the burden shifts to the defendant to show a legitimate nondiscriminatory reason for its action. *See id.* If the defendant succeeds, the burden shifts back to the plaintiff to show the reasons offered by the defendant are pretext for unlawful conduct. *See id.* On a motion for summary judgment a district court considers whether there is sufficient evidence to create a genuine issue of material fact at each stage of the *McDonnell Douglas* framework. *Id.*

## A. The Interference Theory

To establish a prima facie case of interference the plaintiff must show:

(1) he was an eligible employee; (2) the defendant was an employer as defined by the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of his intention to take leave; and (5) the employer denied the employee FMLA benefits to which he was entitled.

*Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006). The burden of proof at the prima facie stage is minimal. *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283 (6th Cir. 2012); *see also Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007) ("As an initial matter [a] plaintiff's burden in establishing a prima facie case is not intended to be an onerous one.") (internal citations omitted).

### 1. Plaintiff's Burden: Prima Facie Case

The parties do not dispute the first four elements. Only the fifth element is in contention here, i.e., whether Defendant took any action that denied Plaintiff FMLA benefits to which he was entitled.

Employees do not enjoy an absolute right to non-interference with FMLA leave. *Arban*, 345 F.3d at 401. Employers can take an action against employees without denying them FMLA benefits only if such action "would have occurred regardless of the employee's request for or taking of FMLA leave." *Id.* "[T]he FMLA does not protect an employee from being terminated for reasons not related to her FMLA leave." *Cox-Frietch v. Ohio*, No. 1:10-cv-323, 2012 U.S. Dist. LEXIS 19189, at *22–23 (S.D. Ohio Feb. 15, 2012) (citing *Arban*, 345 F.3d at 401). "If the employer has a legitimate justification, unrelated to the exercise of FMLA rights, for taking the adverse action, there is no FMLA violation. *Id.* (citing *Edgar*, 443 F.3d at 508). The fifth element has been rephrased as a "negative-factor analysis" because "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions." *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 (6th Cir. 2007) (quoting 29 C.F.R. § 825.220(c)).

Plaintiff claims that his FMLA leave was used as a negative factor in the decisions to issue the DAN and terminate his employment, and that he was denied FMLA benefits as a result. (Pl.'s Resp. at 12; Compl. ¶¶ 52–61.)

Defendant moves for summary judgment arguing that there is no genuine dispute of material fact that Plaintiff was not denied FMLA benefits because Plaintiff testified that he was never denied any FMLA leave to which he was entitled. (Def.'s Mot. Summ J. at 13 (citing Redick Dep. 84:5–10).) Plaintiff does not argue otherwise. The Court agrees.

Defendant also argues there is no genuine dispute of material fact that neither the DAN, nor Plaintiff's termination, resulted from Plaintiff's use of FMLA leave, and thus Plaintiff cannot satisfy the fifth element of the prima facie case. (Def.'s Mot. Summ. J. at 12–14.) To this point Plaintiff disagrees.

Defendant maintains that both the DAN and Plaintiff's termination resulted from Plaintiff's performance deficiencies. (Def.'s Mot. Summ. J. at 14.) As evidence of such, Defendant points to the text of the DAN, Plaintiff's testimony, and Mr. Manassero's testimony.

First, Defendant points out that the text of the DAN lists numerous performance deficiencies including inappropriate behavior, failure to coach, lack of availability, and lack of follow through. (Redick Dep. Ex. 16.) Defendant clarifies that "[a]vailability" refers to the fact that "[d]uring normal business hours [Plaintiff] puts up an auto away message in his email. [Plaintiff] has been told not to use auto away messages unless he is on PTO for that day. He continues to put up messages anyways." (*Id.*) Defendant argues the text of the DAN explains why it was issued. (Def.'s Reply at 3.) Additionally, Plaintiff's failure to correct these issues required his termination. (*Id.*)

Defendant further explains the reference to "availability" in the DAN with Plaintiff's testimony. (Def.'s Reply at 3.) When asked about the availability section of the DAN, Plaintiff discusses his use of auto-away email messages. (*See* Redick Dep. 134:3–16.) He did not discuss that he believed it referred to his FMLA leave. (*Id.*)

Additionally, Defendant cites Mr. Manassero's declaration. (Def.'s Reply at 3.) Defendant attached Mr. Manassero's declaration as an exhibit to its reply brief "to counter unsupported arguments made by Plaintiff's Opposition to Defendant's Motion for Summary judgment." (Def.'s Reply at 3 n.2.) In his declaration, Mr. Manassero states availability "referred only to Mr. Redick's lack of responsiveness during business hours" and "did not refer in any manner to Mr. Redick's absence from work while taking job-protected leave pursuant to the [FMLA]." (Manassero Decl. ¶¶ 4–5.)

In contrast, Plaintiff argues there is a genuine issue of material fact as to whether he can satisfy the fifth element of his prima facie case. (Pl.'s Resp. at 12.) In support, he points out the language and circumstances of the DAN, Mr. Lee's comment to Plaintiff regarding FMLA leave, and the temporal proximity of his use of FMLA leave and the adverse employment actions. (*Id.*)

First, Plaintiff relies on the language of the DAN, specifically "availability." (*Id.*) According to Plaintiff, while Defendant argues this refers only to instances when he was not on FMLA leave, his availability only became an issue when he started taking FMLA leave. (*Id.* at 15–16.) Plaintiff had been a supervisor since June of 2015 and his availability did not become reason for formal discipline until the year he started taking FMLA leave. (*See id.*) Further, Plaintiff testified that he used auto-away emails previously, but Mr. Lee requested that he stop. (Redick Dep. 134:22–135:2.) He stated he had already stopped using the messages and had no idea why it was noted on the DAN. (*Id.* at 135:3–10.)

Next, Plaintiff argues Mr. Lee's discriminatory comment, asking if he was going to abuse FMLA leave, is evidence that such leave was later used against him. (Pl.'s Resp. at 15.) Plaintiff admits that Mr. Lee was not his supervisor at the time the DAN was issued or when he was terminated. (Redick Dep. 83:4–5.) Plaintiff argues, however, that Mr. Lee's comment is still evidence that his FMLA leave was a negative factor in the decision to take disciplinary action because Mr. Manassero, who wrote the DAN and requested Plaintiff's termination, testified that he and Mr. Lee discussed Plaintiff when Mr. Manassero took over the role as supervisor. (Manassero Dep: 12:9–13:3.)

Finally, Plaintiff argues the temporal proximity between his use of FMLA leave and the two adverse employment actions, raise a genuine issue of material fact as to whether there was interference with his protected rights. (*Id.* at 16.) Plaintiff had no formal discipline prior to applying for and taking FMLA leave. (Redick Aff. ¶ 39–40.) In the years preceding his application for FMLA leave, Plaintiff's evaluations were good. (Redick Dep. Ex. 7, 10.) Plaintiff took FMLA leave in the month preceding the DAN. (*Id.*) He also took FMLA leave several times in September of 2017, including the same day Mr. Manassero first made a request to the HR department that Plaintiff be terminated. (*Id.*) Further, Plaintiff was terminated only four calendar days and two business days after having taken FMLA leave. (*Id.*) Defendant replies to this argument by arguing that temporal proximity is not enough to create a genuine issue of material fact. (Def.'s Mot. Summ. J. at 15.)

Plaintiff has provided enough evidence to raise a genuine issue of material fact as to whether his use of FMLA leave was used as a negative factor in Defendant's decision to issue his DAN and then terminate him. The Sixth Circuit has found temporal proximity to be enough to satisfy a prima facie case. *See Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 317 (6th

Cir. 2001). Further, the burden at the prima facie stage is not an onerous one. *Seeger*, 681 F.3d at 283. Plaintiff has provided evidence not only of the temporal proximity between both actions taken and his use of FMLA leave, but also the DAN's discussion of "availability," and Mr. Lee's comment. A reasonable jury could find Defendant denied Plaintiff of FMLA benefits.

The evidence Plaintiff relies on, however, is circumstantial, since none of it *requires* a finding of interference. Thus, under the *McDonald Douglas* burden shifting framework, the burden shifts to Defendant to show a legitimate reason for its action. *See Donald*, 667 F.3d at 761–62.

### 2. Defendant's Burden: Legitimate Reason for Its Action

Defendant argues that even if Plaintiff can show a prima facie case, his claim still fails because of Defendant's honest belief that Plaintiff had failed to correct several work-related performance deficiencies, such as:

- Using out-of-office emails when working, despite being told not to;
- Failing to follow the chain of command;
- Lack of accountability for mistakes;
- Improperly deflecting questions when asked;
- Failing to coach those he supervised;
- Using inappropriate language and tone of voice with co-workers and subordinates;
- Failing to complete required training classes; and
- Failing to be responsive when at work and available.

(Def.'s Reply at 2.) This satisfies Defendant's burden at this stage. Accordingly, the burden now shifts to Plaintiff to show the articulated reasonings are in fact pretextual. *Skrjanc*, 272 F.3d at 315.

### 3. Plaintiff's Burden: Defendant's Reasons are Pretextual

Plaintiff argues that Defendant's reasoning for issuing the DAN and terminating him are pretextual because "a reasonable juror could find Defendant's reasons for termination unworthy of belief." (Pl.'s Resp. at 19–29.)

14

"A plaintiff may show that the legitimate non-discriminatory reason given by the employer is a pretext for discrimination by showing that the reason given (1) has no basis in fact, (2) did not actually motivate the employer's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Walker*, 2015 U.S. Dist. LEXIS 48335 at *28 (citing *Clay v. UPS*, 501 F.3d 695, 704 (6th Cir. 2007)). Importantly, "consideration of pretext focuses on the defendant's beliefs and not on the plaintiff's own perceptions." *Id.* The plaintiff bears the burden of producing sufficient evidence from which a jury could reasonably reject the defendant's explanation and infer the defendant intentionally discriminated against the plaintiff. *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001).

In the Sixth Circuit, "for an employer to avoid a finding that its claimed nondiscriminatory reason was pretextual, the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." *Blizzard v. Marion Tech. Coll.*, 698 F.2d 275, 286 (6th Cir. 2012) (citing *Escher v. BWXT Y-12, LLC*, 627 F.3d 1020, 1030 (6th Cir. 2010)). This is known as the honest belief rule. *See id.*

The honest belief rule was initially developed by the Seventh Circuit and "provides that so long as the employer honestly believed in the proffered reason given for its employment action, the employee cannot establish pretext even if the employer's reasons is ultimately found to be mistaken, foolish, trivial, or baseless." *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998) (citing *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 676 (7th Cir. 1997); *McCoy v. WGN Cont'l Broad. Co.*, 957 F.2d 368, 373 (7th Cir. 1992); *Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557, 559–60 (7th Cir. 1987)). However, the Sixth Circuit has expressly rejected the Seventh Circuit's application of the honest belief rule to the extent that it "credits an employer's belief without requiring that it be reasonably based on particularized facts rather than on ignorance and

mythology." *Smith*, 155 F.3d at 806. The Sixth Circuit noted: "[t]he rationale behind the rule is that the focus of a discrimination suit is on the intent of the employer. If the employer honestly, albeit mistakenly believes in the non-discriminatory reason it relied upon in making its employment decision, then the employer lacks the necessary discriminatory intent." *Id.*

Thus, under the Sixth Circuit's modified honest belief rule, "for an employer to avoid a finding that its claimed nondiscriminatory reason was pretextual, 'the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made.'" *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 708 (6th Cir. 2012) (*quoting Smith*, 155 F.3d at 806–07); *see also Balmer v. HCA, Inc.*, 423 F.3d 606, 614 (6th Cir. 2005). Importantly, when "determining whether an employer 'reasonably relied on the particularized facts then before it,'" the Court does "'not require that the decisional process used by the employer be optimal or that it left no stone unturned.'" *Id.*

If the employer meets this burden, the burden shifts to the employee who must "produce 'proof to the contrary' that challenges the foundation of the employer's belief or lose on summary judgment." *Hardesty v. Kroger Co.*, 758 F. App'x 490, 493 (6th Cir. 2019) (citing *Smith*, 155 F.3d at 807). However, "[d]isputing facts is not enough—instead, the plaintiff must produce evidence 'demonstrat[ing] that the employer did not honestly believe in the proffered nondiscriminatory reason for its adverse employment action.'" *Block v. Meharry Med. Coll.*, 723 F. App'x 273, 280 (6th Cir. 2018) (quoting *Braithwaite*, 258 F.3d at 494). While the Court "will not 'micro-manage the process used by employers in making their employment decisions,' [the Court] also will not 'blindly assume that an employer's description of its reasons is honest.'" *Id.* (quoting *Smith*, 155 F.3d at 807).

### a.     Defendant Argues It Is Protected by the Honest Belief Rule

The first question is whether Defendant can show it reasonably relied on particularized facts when it decided Plaintiff had performance deficiencies justifying a DAN and termination. Defendant identifies several facts which underly its belief that Plaintiff had performance deficiencies.

Defendant claims it relied the September 2016 and the September 2017 SMFs, detailing conversations Plaintiff's supervisors had with Plaintiff about various performance issues. (Redick Dep. Exs. 9, 11.) These issues included failure to ensure his team followed the chain of command when reporting problems and failure to address numerous improper actions taken by Plaintiff's subordinate Mr. Bennet. (*Id.*)

Defendant also claims it relied on Plaintiff's feedback forms noting Plaintiff's tendency to point fingers in heated situations and deflect questions. (*Id.* at Ex. 11.) Further, Defendant claims it relied on a complaint from a supervisor in another department, detailing Plaintiff and his subordinate's tendency to speak loudly, use curse words, and have inappropriate conversations. (*Id.* at Ex. 12.) Additionally, Defendant points to documentation showing Plaintiff was late in completing his required training. (*Id.* Ex. 13.) Defendant also relied on documentation of Mr. Manassero attempting to coach Plaintiff on some of these issues, such as using inappropriate language, failing to respond to emails, and failing to follow through with training before the due date. (*Id.* at Ex. 15.)

Finally, in support of Plaintiff's termination, Defendant provides it relied on the information in the DAN, namely the sections explaining Plaintiff's inappropriate behavior, failure to coach subordinates, lack of availability, and lack of follow through with online assignments. (*Id.* at Ex. 16.)

Defendant has satisfied its burden of providing particularized facts it relied on in making its decisions regarding Plaintiff. Now, the burden moves to Plaintiff to produce evidence challenging the Defendant's honest belief in its reasons. *Hardesty*, 758 F. App'x at 493.

### b.    Plaintiff Calls into Question Defendant's Honest Belief

Plaintiff argues there is evidence that calls into question Defendant's stated reasons underlying its honest belief including: Mr. Lee's discriminatory comment; inconsistencies in Mr. Manassero's assertion that Plaintiff's performance was not improving; weaknesses in the content of the DAN and SMF; and the temporal proximity between his use of FMLA leave and his discipline and termination. (*See* Pl.'s Reply at 17–28.) First, Plaintiff points to Mr. Lee's discriminatory comment about abuse of FMLA leave. (*Id.* at 17.) Plaintiff argues this comment is evidence of pretext, even though Mr. Lee did not decide to discipline or terminate Plaintiff. (*Id.* (citing *Risch v. Royal Oak*, 581 F.3d 383, 393 (6th Cir. 2009) ("We have held that discriminatory remarks, even by a non decisionmaker, can serve as probative evidence of pretext.")).) Plaintiff also argues that Mr. Lee's comment is evidence of pretext because Mr. Manassero testified that he and Mr. Lee discussed Plaintiff when Mr. Manassero took over Mr. Lee's role. (*Id.* at 18 (citing Manassero Dep. 12:9–13:3).) Specifically, Mr. Lee told Mr. Manassero Plaintiff "needed mentoring," despite having no formal discipline and generally positive feedback forms. (*Id.*)

Second, Plaintiff points to numerous "weakness, implausibility's, inconsistencies, incoherencies [and] contradictions" in Defendant's reasoning. (Pl.'s Resp. at 18 (citing *Tinker v. Sears, Roebuck & Co.* 127 F.3d 519, 523–24 (6th Cir. 1997) (noting that the inconsistencies in the statements of different managers as to who was responsible for firing the plaintiff, and why, created a genuine issue of material fact as to pretext)).) Plaintiff notes that Defendant claims termination resulted from a failure to correct performance deficiencies, as well as that Plaintiff's performance

"got worse" after the DAN. (Def.'s Mot. Summ. J. at 9.) Computerized chats between Plaintiff and Mr. Manassero, however, are inconsistent with this contention. Mr. Manassero gave positive feedback signifying he believed Plaintiff was correcting his performance issues. (Pl.'s Resp., Ex. 15.) For example, on August 10, 2017, Mr. Manassero said "I wanted to add that the other [supervisors] have taken notice and appreciate your shift in participation. Keep up the good work." (*Id.*) Similarly, on August 25, 2017, Mr. Manassero said "I believe you are on the right track so just keep it up." (*Id.*) These are inconsistent with the argument that Plaintiff's performance did not get better and instead got worse.

Third, Plaintiff points to weaknesses in the reasoning for his discipline according to the DAN, as well as Defendant's allegation that Plaintiff failed to address these issues, which caused his termination. (Pl.'s Resp. at 20–26.) The DAN states Plaintiff's behavior was inappropriate and included engaging in loud and inappropriate conversations. (Redick Dep. Ex. 16.) Plaintiff points out this issue was primarily due to one of Plaintiff's subordinates, Mr. Bennet, as can be seen from an email complaining about Mr. Bennet, and not about Plaintiff. (Redick Dep. Ex. 17.) Additionally, Plaintiff points to the affidavits of his colleagues which note that he was always professional and positive. (*See* Pl.'s Resp. at Ex. 18, 19.) Further, Plaintiff explains that he took immediate action after the DAN including meeting one-on-one with another supervisor to address the noise concerns and emailing his team to remain quiet and professional. (*Id.* at Ex. 21; Redick Dep. 132:19–23.) Mr. Manassero testified that he agreed Plaintiff addressed these concerns one day after receiving the DAN. (Manassero Dep. 31:7–32:20.)

Next, the DAN addresses Plaintiff's failure to deliver coaching. (Redick Dep. Ex. 16.) Plaintiff points out that he was not able to provide coaching online due to technical difficulties and thus coached his team one-on-one and through manual forms. (*Id.* at 119:21–121:18.) Plaintiff

notes Mr. Manassero acknowledged this on August 3, 2017, in a chat stating "[t]hank you for clarifying, as long as we double back and do all the [online] coaching for those months we are lacking, that should bring us up to par." (Pl.'s Resp., Ex. 15.) Thus, Mr. Manassero had communicated that, for the time being, Plaintiff's method of coaching was acceptable. (*See id.*) Additionally, Plaintiff did not fail to address this aspect of the DAN, he explains, because he scheduled coaching the day after he received the DAN. (Pl.'s Reply at Ex. 15.) Plaintiff informed Mr. Manassero of this on August 17, 201, who responded "[n]ice. Thanks for the update Rich." (*Id.*)

The DAN also discusses Plaintiff's unavailability. (*See* Redick Dep. Ex. 16.) Plaintiff points out that in his 2016 evaluation, prior to taking FMLA leave, he received positive evaluations regarding his availability, such as "Richard is always flexible and ready to do what is needed to get the job done," and "Richard is always willing to step up and assist on any issue or any problem." (Pl.'s Resp., Ex. 22.) Plaintiff points out that his availability did not become an issue until after he began taking FMLA leave. (*Id.* at 24.)

Finally, Plaintiff attacks comments in the DAN which state he lacks follow through and is not accountable. (*Id.* at 24–25.) Plaintiff points out that while the DAN stated he lacked follow through in completing his training, he had previously informed Mr. Manassero why his training was late. (*Id.* at Ex 23; Redick Aff. ¶ 50.) He had no trouble completing his training going forward. (*Id.*) As for accountability, Plaintiff points to the affidavits of his co-workers which state that they did not know him to pass anything to other people. (*Id.* at Exs. 18, 19.) Plaintiff also points to his 2016 performance evaluation, prior to his taking of FMLA leave, which states that he had improved in being accountable and responsible. (*Id.* at 22.)

In addition, Plaintiff identifies flaws in the 2017 SMF. Plaintiff notes that many of the issues in the SMF concern Mr. Bennet's behavior. Plaintiff points out that even Mr. Klaus expressed reservations about terminating Plaintiff based on behavior mainly connected to Mr. Bennet. (*Id.* at Ex. 24.) Mr. Klaus stated "[i]'m not sure we should be terminating Richard for not following up/ addressing with James accordingly, but not also addressing appropriately with James having been the one that did [not] do what he should have been doing initially." (*Id.*) Plaintiff notes that not only was the noise and inappropriate behavior linked to Mr. Bennet, but failing to properly service tickets in the queue and sending inappropriate emails to customers were linked to Mr. Bennet as well. (*Id.* at Exs. 11, 25.)

Plaintiff also specifically addresses the mention of old tickets being left in the queue noted in the 2017 SMF. (*Id.* at 28.) Plaintiff points out that this note occurred right after Project Nickel ended, leaving him with a heavily reduced workforce. (Redick Aff ¶¶ 26–30.) Plaintiff explains that he was doing the best he could with the decreased number of workers and his necessity of occasionally taking FMLA leave. (*Id.*) Plaintiff also notes that he quickly responded to his supervisor on this issue. (Pl.'s Resp., Ex. 26.)

Additionally, Plaintiff points out that while the 2017 SMF states that he took no initiative in assisting a customer and instead just texted the on-call individual, his supervisor at that time, Mr. Lee, asked him to do that. (*Id.* at Ex. 27.) He quickly followed Mr. Lee's order, and informed Mr. Lee that his request was handled. (*Id.*)

Finally, Plaintiff argues the temporal proximity between his taking of FMLA leave and both the DAN and his termination, show pretext. *See infra* Section III.A.1 (discussing Plaintiff's arguments with respect to temporal proximity).

In Plaintiff's view, all of these arguments together show a genuine issue of material fact as to (a) whether Defendant honestly believed Plaintiff had performance deficiencies; (b) whether a DAN was required; and (c) whether the deficiencies were satisfactorily addressed prior to termination.

Under all of these circumstances, the Court concludes there is a genuine issue of material fact as to whether Defendant held an honest belief that Plaintiff's performance deficiencies justified a DAN and termination. First, the Court agrees with Plaintiff that Mr. Lee's comment is relevant to pretext. The Sixth Circuit explained in *Ercegovich v. Goodyear Tire & Rubber, Company*, that while a non-decisionmaker's discriminatory statement, standing alone, generally does not support an inference of discrimination, the comments are "not categorically excludable." 154 F.3d 344, 356 (6th Cir. 1998). This is because such a statement can be "[c]ircumstantial evidence establishing the existence of a discriminatory atmosphere at the defendant's workplace," which, "may serve as circumstantial evidence of individualized discrimination directed at the plaintiff." *Id.* The Sixth Circuit also clarified that that "evidence of a corporate state-of-mind or a discriminatory atmosphere is not rendered irrelevant by its failure to coincide precisely with the particular actors or timeframe involved in the specific events that generated a claim of discriminatory treatment." *Id.* (citing *Conway v. Electro Switch Corp.*, 825 F.2d 593, 597–98 (1st Cir. 1987).

For example, in *Risch v. Royal Oak Police Department*, the plaintiff argued the defendant passed her over for a promotion because she was a woman. 581 F.3d 383, 391 (6th Cir. 2009.) The defendant maintained she was passed over because other applicants had better performance reviews and examination scores. (*Id.*) The plaintiff, seeking to show pretext, offered evidence of other employees' comments regarding the capabilities of females in her position and other

generally degrading remarks about women. *Id.* at 392. The employees who made the remarks were not those in the position to decide who was promoted. (*Id.*) Nevertheless, the Sixth Circuit found the comments "suggest[ed] an atmosphere hostile to the promotion of female officers." (*Id.*) The Sixth Circuit found that the comments, together with other evidence such as the plaintiff's qualifications, raised a genuine issue of material fact as to whether she was denied the promotion on the basis of her sex. *Id.* at 393–94. Thus, summary judgement was not appropriate. *Id.*; *see also Ercegovich*, 154 F.3d at 355 (finding a non-decisionmaker's statements, along with other circumstantial evidence, relevant as to whether the individual was discriminated against because of her age and thus summary judgment inappropriate).

Here, Mr. Lee's statement is not irrelevant simply because it was not made by the individual who disciplined and fired Plaintiff, or because it did not coincide with the time when Plaintiff was disciplined and fired. *See Ercegovich*, 154 F.3d at 355. Rather, the statement is relevant to whether the company had an atmosphere of animosity towards employees taking FMLA leave. Additionally, the fact that Mr. Lee told Mr. Manassero, when he took over the supervisor position, that Plaintiff "needed mentoring," despite his good evaluation, and positive feedback forms, supports Plaintiff's argument that Defendant had an animus towards those who took FMLA leave. While Mr. Lee's statement alone would be unlikely to raise a genuine issue of material fact, when combined with the other evidence Plaintiff offers, it is relevant to the overall question of whether a reasonable jury could find Defendant's reasons pretextual.

In addition to Mr. Lee's statement, Plaintiff's evidence of Mr. Manaserro's inconsistent statements about whether he believed Plaintiff's performance was improving is also relevant. Mr. Manassero told Mr. Klaus that Plaintiff's performance was not improving. Mr. Manassero also, however, gave Plaintiff positive feedback on his work to correct his alleged deficiencies. A

reasonable juror could find these chats show Mr. Manassero believed Plaintiff was improving. Additionally, Plaintiff testified to all of the things he was doing to improve his performance. This further supports his argument that Defendant may not have had an honest belief in his lack of improvement.

Plaintiff's evidence calling into question the content of the DAN and SMF, is also persuasive. All the evidence that Plaintiff provides could lead a reasonable juror to find that Defendant did not honestly believe the content of the DAN and SMF required discipline and termination.

Finally, Plaintiff points to the temporal proximity between his FMLA leave and the adverse employment actions. *See infra* Section III.A.1. The Court agrees with Defendant that temporal proximity, alone, is not enough to create a genuine issue of material fact as to whether the reasons provided by the defendant are pretextual. *Carey v. ODW Logistics Inc.*, No. c2-08-0581, 2010 U.S. Dist. LEXIS 13059, at *15–16 (S.D. Ohio Feb. 16, 2010); *Heady v. United States Enrichment Corp.*, 146 F. App'x 766, 770 (6th Cir. 2005); *Skrjanc*, 272 F.3d at 317. In this case, however, Plaintiff has provided more than just evidence of temporal proximity. The temporal proximity, along with Mr. Lee's discriminatory remark, the inconsistency over whether Plaintiff's performance improved, and the evidence that a reasonable juror could use to find the items stated in the DAN and SMFs are no basis for an honest belief in the need for discipline and termination, create a genuine dispute of material fact as to whether there is pretext.

Plaintiff has provided evidence that creates a genuine dispute of material fact as to whether Defendant's stated reasons for its actions have a basis in fact, did actually motivate the employer's challenged conduct, and whether the information Defendant relied on was sufficient to warrant its conduct. *See Walker*, 2015 U.S. Dist. LEXIS 48335 at *28. Having failed to show there is no

genuine dispute of material fact as to whether its reasoning for taking action against Plaintiff was pretextual, Defendant is not entitled to summary judgment on Plaintiff's interference claim.

## B. The Retaliation Theory

To establish a prima facie case of retaliation the plaintiff must show:

(1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Killian*, 454 F.3d at 556. As in an interference claim, the burden of proof at the prima facie stage of a retaliation claim is minimal. *Seeger*, 681 F.3d at 283; *see also Bryson*, 498 F.3d at 571.

### 1. Plaintiff's Burden: Prima Facie Case

The first three elements are not disputed. Defendant argues Plaintiff cannot establish the fourth element, a causal connection between Plaintiff's FMLA activity and the adverse employment actions. (Def.'s Mot. Summ. J. at 15.) Specifically, Defendant argues Plaintiff cannot establish a causal connection because temporal proximity alone, is not enough to create a genuine dispute of a material fact. (*Id.* at 16.)

Plaintiff argues that the temporal proximity between his FMLA leave, the DAN, and his termination, combined with the notation of availability on the DAN, and Mr. Lee's comment regarding abuse of FMLA leave, create a genuine dispute of material fact as to whether there is a causal connection. Plaintiff makes the same arguments regarding temporal proximity, availability, and Mr. Lee's comments that Plaintiff made in connection with the prima facie case for his FMLA interference claim. *See infra* Section III.A.1.

The Sixth Circuit has cautioned that in applying employment discrimination statutes that require determination of the defendant's motive, temporal proximity alone is unlikely to be enough to prove a connection between the protected behavior and the action taken against the employee.

*See Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010). Generally, "temporal proximity itself is insufficient to find a causal connection" but when coupled with "other indicia of retaliatory conduct may be sufficient." *Randolph v. Ohio Dep't Youth Servs.*, 453 F.3d 724, 737 (6th Cir. 2006).

For example, in *Denton v. Fairfield Medical Center*, a plaintiff argued the defendant retaliated against the plaintiff for taking FMLA leave. No. 2:11-cv-716, 2012 U.S. Dist. 87983, at *6 (S.D. Ohio June 26, 2012). The plaintiff offered evidence that she was fired three weeks after returning from FMLA leave. *Id.* at *1–2. This Court found this single allegation insufficient to conclude that the plaintiff had alleged a sufficient causal connection. *Id.* at *7–8.

In contrast, in *Randolph v. Ohio Department of Youth Services*, the plaintiff argued she was subjected to retaliation in violation of Title VII when she was fired after reporting sexual harassment. 453 F.3d at 737. The Sixth Circuit found enough evidence to satisfy the prima facie case because the plaintiff had provided evidence of the temporal proximity of her protected conduct and her termination, "coupled with the fact that she was subjected to rumors about inappropriate behavior." *Id.* In other words, the plaintiff had provided evidence of temporal proximity coupled with other indicia of retaliatory conduct. *Id.*

Here, Plaintiff has provided evidence of the temporal proximity between his taking of FMLA leave and the adverse employment actions. *See infra* Section III.A.1

Plaintiff also provides additional evidence of a causal connection. Plaintiff's evidence includes Defendant's concern over Plaintiff's "availability," only after Plaintiff started taking FMLA leave, and Mr. Lee's comments about FMLA leave. *See infra* Section III.A.1. Taking all of this evidence together, Plaintiff has provided sufficient evidence to raise a genuine issue of

material fact as to whether there was a causal connection between his protected FMLA activity and the adverse employment actions.

The evidence Plaintiff has provided is circumstantial. Thus, under the *McDonald-Douglas* burden shifting framework, the Court must now consider Defendant's legitimate reasons for its actions. *See Donald*, 667 F.3d at 761–62.

### 2. Defendant's Burden: Legitimate Reason for Its Action

Defendant relies on the same reasons for its action as explained above in Section III.A.2. Accordingly, this Court finds Defendant's burden at this stage is satisfied. The burden now shifts to Plaintiff to show the articulated reasons are pretextual. *Skrjanc*, 272 F.3d at 315.

### 3. Plaintiff's Burden: Defendant's Reason is Pretextual

Plaintiff provides identical arguments for why Defendant's reasoning is pretextual for retaliation as why they were pretextual for interference. (*See* Pl.'s Resp. at 19–29; *infra* Section III.A.3.) As in Plaintiff's claim for interference, the Court concludes there is a genuine dispute of material fact as to whether Defendant had an honest belief that justified the DAN and Plaintiff's termination. *See infra* Section III.A.3. Having failed to show there is no genuine dispute of material fact, Defendant is not entitled to summary judgment on Plaintiff's interference claim.

### IV.

For the reasons set forth above, the Court **DENIES** Defendant's Motion for Summary Judgmen (ECF No. 26).

**IT IS SO ORDERED.**

1-6-2010
_____

**DATED**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**